UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL CABALLERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-02906-GCS |
| | ) |
| LAWRENCE CORRECTIONAL | ) |
| CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Paul Caballero ("Caballero"), an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence"). (Doc. 23-1).[1] Defendant Dr. Quang Tran argues that summary judgment should be granted in his favor because Plaintiff failed to exhaust his administrative remedies prior to filing suit. As explained below, the Court agrees with Dr. Tran and **GRANTS** the motion for summary judgment.

### PROCEDURAL BACKGROUND

On August 23, 2023, Plaintiff brought this suit related to inadequate dental care he received while incarcerated at Lawrence Correctional Center. (Doc. 1).[2] Plaintiff alleges

---

[1] Plaintiff is currently incarcerated at Illinois River Correctional Center ("IRCC").

[2] On March 28, 2025, the Court granted Plaintiff leave to file his First Amended Complaint. (Doc. 33). Accordingly, Court only references the allegations in the First Amended Complaint, (Doc. 23-1), in this Order.

the following facts in support of his claims:

On or about November 26, 2022, Plaintiff began experiencing tooth pain. (Doc. 23-1, p. 3). On that date, Plaintiff expressed "in writing" how the pain began radiating beyond his mouth to other areas of his face. *Id*. Plaintiff had previously written to the "Healthcare Dentist" explaining the pain he was experiencing. *Id*. He also complained about his tooth pain and fear of losing his teeth on multiple occasions to Nurse Simpson, Nurse Newcom, Correctional Officer Crawford, and Correctional Sergeant Fitzgerald. *Id*. at p. 3-4.

Throughout December 2022, Plaintiff wrote requests to the Healthcare Unit once a week to see a dentist. *Id*. at p. 4. On December 14, 2022, Plaintiff filed Grievance No. 12-22-130 notifying Lawrence personnel he had not been seen by medical or dental staff concerning his tooth pain after sending in multiple requests. *Id*.

On or about January 17, 2023, Plaintiff yelled for a "med-tech" and summoned prison officials for assistance. *Id*. at p. 5. Plaintiff was administered two Tylenol for his pain. *Id*. Plaintiff was not prescribed any other medication to alleviate the pain. *Id*. Plaintiff was provided a call pass to see the dentist, but it was cancelled on January 17, 2023. *Id*.

On January 31, 2023, Plaintiff was seen by Dr. Tran. *Id*. at p 5-6. Dr. Tran concluded the tooth could not be saved and decided to extract the tooth. *Id*. In the process of extraction, Dr. Tran fractured the adjacent tooth. *Id*. Plaintiff was not seen following the tooth fracture, even after submitting a request. *Id*. at p. 6. Plaintiff was seen for his two-year examination on February 28, 2023, and informed nursing staff of his fractured tooth

and pain. *Id*. From February 23, 2023, to March 6, 2023, Plaintiff had multiple call passes to see Dr. Tran, the Health Care Unit, or the In-House Unit, all of which were cancelled. *Id*. at p. 6-7. Plaintiff was not seen for the fractured tooth during this time period. *Id*.

On June 6, 2023, Dr. Tran extracted two teeth from the left side of Plaintiff's mouth after determining the teeth had decayed beyond repair. *Id.* at p. 7. Dr. Tran was unsuccessful in pulling the second tooth out in its entirety during extraction. *Id*. Dr. Tran informed Plaintiff part of the broken tooth remained in his mouth and needed to be removed, but there was not enough time left during the current appointment to remove the fragment. *Id*. Dr. Tran notified Plaintiff he would have to be scheduled for another visit to complete the extraction of the remaining piece. *Id*. at p. 8. Dr. Tran did not schedule Plaintiff for a follow up appointment. *Id*. Plaintiff notified Dr. Tran through request slips he had to be seen for the extraction, and the remaining tooth fragment was causing "unbearable pain." *Id*.

Plaintiff was seen by the In-House Dental Assistant, Stephanie Mills ("Mills"), and recounted the aforementioned events. *Id*. After Mills consulted with Dr. Tran, she informed Plaintiff that Dr. Tran did not acknowledge leaving a tooth fragment in Plaintiff's mouth nor the need to reschedule follow-up care. *Id*. at p. 8-9. Plaintiff informed Mills that information was not accurate, and Mills refused to provide Plaintiff medical attention other than providing Ibuprofen. *Id*. at p. 9. Plaintiff received a disciplinary report because of this incident. *Id*.

On or about the first week of September 2023, Plaintiff was seen by Dr. Tran for an appointment. *Id*. Plaintiff complained about the tooth fragment in his mouth and the lack

of time concerning the prior procedure. *Id*. Plaintiff informed Dr. Tran he was not seen for follow-up care, and Dr. Tran denied the need for follow-up care because the June 6, 2023, procedure was complete. *Id*. at p. 10. Dr. Tran showed Plaintiff an x-ray of his mouth to corroborate his claims. *Id*. However, Plaintiff alleges he had no knowledge of when this x-ray was conducted. *Id*. Plaintiff requested a new x-ray on the same date. *Id*. Dr. Tran conducted another x-ray on Plaintiff's mouth which showed there was nothing lodged in Plaintiff's mouth. *Id*. Plaintiff was confused by the results and showed Dr. Tran his mouth to show a "piece protruding from the part of the [Plaintiff's] mouth where the second tooth was pulled out." *Id*. Plaintiff reasserted he was suffering from pain due to the tooth fragment remaining in his mouth. *Id*. Dr. Tran denied all of Plaintiff's allegations. *Id*. at p. 11. At a later visit concerning the filling of a wisdom tooth, Dr. Tran did not address the prior events. *Id*.

On April 24, 2024, Plaintiff was transferred to IRCC. *Id*. On or about the month of May of 2024, Plaintiff had a dental visit in the healthcare unit at IRCC where another x-ray was conducted. *Id*. The x-ray showed a piece of tooth was lodged on the left side of Plaintiff's mouth. *Id*. Plaintiff was advised that the procedure to remove the tooth fragment could not take place at IRCC because of the time that had passed resulting in the sensitivity of the impacted area and that a referral to an outside hospital was needed for further treatment. *Id*. Plaintiff alleges he still suffers from pain and is at risk for medical complications due to Dr. Tran's procedure. *Id*. at p. 11-12.

On February 2, 2024, the Court completed its preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on the

following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Tran for providing Plaintiff inadequate dental care.
>
> **Count 2:** State law negligence claim against Tran for providing Plaintiff inadequate dental care.

(Doc. 11, p. 3, 5).[3]

On July 25, 2024, Defendant filed a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 27). On August 8, 2024, Plaintiff filed a response in opposition. (Doc. 30). The Court held a hearing on the motion on May 15, 2025. (Doc. 37). Accordingly, the motion is now ripe for the Court's review.

## FACTUAL BACKGROUND

Based on his review of Plaintiff's grievance record, Dr. Tran has identified two grievances relevant to the claims in this case: Grievance Nos. 12-22-130 and 08-23-208. (Doc. 28-1, Exh. A). The Court will recount the content of these grievances below.

**A.     Grievance No. 12-22-130**

Plaintiff submitted Grievance No. 12-22-130 on December 14, 2022. (Doc. 28-2, Exh. B, p. 97). Plaintiff grieved to prison personnel that he needed dental attention and had not received it during his time at Lawrence. *Id.* at p. 97. Specifically, Plaintiff alleged he had been "denied medical or dental treatment after numerous times of sending in requests." *Id*. Plaintiff noted he was "dealing with major pain in [his] teeth, a filling fell out and [he needs] some fillings done." *Id.* at p. 98. Plaintiff requested as relief dental

---

[3]     After finding that the new allegations in the First Amended Complaint solely related to the already-screened claims in this case, the Court declined to conduct an additional review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 33, p. 8).

assistance and to avoid similar activity in the future. *Id.* The first level response to the grievance was on December 19, 2022. *Id.* at p. 97.

The Counselor responded to the grievance on January 3, 2023. (Doc. 28-2, Exh. B, p. 97). Using the IDOC call pass records, the Counselor determined "the grievant was seen by the Dental Office on 12-30-23 [sic]." *Id.* The Counselor noted a request to be seen was forwarded on Plaintiff's behalf if his prior appointment was cancelled. *Id.*

On January 10, 2023, Plaintiff appealed the first level response. (Doc. 28-2, Exh. B, p. 99). Plaintiff argued that, although he visited the dental office sixteen days after he submitted the grievance, the treatment he received was ineffective because he was only provided over-the-counter pain medication, such as Ibuprofen or Motrin, which did not alleviate his pain. *Id.* at p. 99. Plaintiff alleged the Counselor's response of sending in a request for Plaintiff to be seen was acknowledgement that Plaintiff had not been treated sufficiently. *Id.* at p. 100.

Plaintiff's appeal was reviewed on February 15, 2023. (Doc. 28-2, Exh. B, p. 95). Plaintiff's appeal was denied because the reviewing officer determined Plaintiff had been seen, treatment was provided, and Plaintiff was placed on the filling list awaiting a call pass. *Id.* The Chief Administrative Officer ("CAO") reviewed the initial Officer's determination on February 24, 2023, and concurred with his decision. *Id.* Plaintiff signed the form to further appeal the CAO's decision on March 22, 2023. (Doc. 28-1, p. 19). On April 6, 2023, the grievance was not addressed further because the ARB determined the appeal was received 30 days after the CAO's Decision. *Id.* at p. 18.

B.     **Grievance No. 08-23-208**

On August 22, 2023, Plaintiff submitted an emergency grievance concerning the allegations against Dr. Tran. (Doc. 28-2, Exh. B, p. 89). Plaintiff named both Dr. Tran and Mills in the Grievance. *Id*. He alleged Dr. Tran had broken his tooth adjacent to the tooth Dr. Tran had previously extracted from his mouth. *Id.* at p. 90. He discussed his pain following the procedure and how he notified correctional officers and medical staff about his condition. *Id.* Plaintiff also noted that he was given antibiotics and pain medication in February 2023 and was called into the Dental Office on February 28, 2023, for a two-year general health examination. *Id.* Plaintiff alleged that visit was when he learned that he had two other teeth which required extraction. *Id.* Although the date of the later procedure was not indicated, Plaintiff indicated that Dr. Tran did not extract a piece of tooth that remained in his mouth causing him pain and discomfort. *Id.* Plaintiff noted that, at the time he submitted his grievance in August, he had not been seen since May. *Id.* Plaintiff concluded by stating he experienced PTSD and Depression due to the incident and was not eating or sleeping. *Id.* As relief, Plaintiff requested that Dr. Tran's license be revoked and that he should receive medical treatment at an outside facility or hospital to address his medical needs. *Id.* at p. 89. On August 25, 2023, the grievance was deemed emergent. *Id.*

The grievance was reviewed on October 12, 2023. (Doc. 28-2, Exh. B, p. 87). The responding Officer noted that Plaintiff had been seen and treated, and that Plaintiff was on the filling list for a call pass when one became available. *Id.* The responding Officer denied Plaintiff's grievance on procedural grounds in that it was a duplicate of Grievance

No. 12-22-130. *Id.* On October 16, 2023, the CAO agreed with the responding Officer's determination. *Id.* Plaintiff signed the form to appeal the CAO's decision on November 6, 2023. (Doc. 28-1, p. 12).

In his appeal of the CAO's response, Plaintiff admitted that, although he had been seen, it was only after experiencing months of pain without any substantial care. (Doc. 28-1, p. 16). Plaintiff further reiterated his history of dental issues, including the degree of pain he experienced, the numerous times he called for assistance concerning his dental pain, and the various conversations he had with prison personnel. *Id.* Next, Plaintiff addressed the conclusion that the grievance was a duplicate of Grievance No. 12-22-130. Plaintiff argued his current dental situation was ongoing, and each Grievance addressed a different dental problem. *Id.* In his explanation, Plaintiff again highlighted the delay in care he experienced concerning both grievances. *Id.* at p. 17. Plaintiff concluded his appeal noting that, despite the CAO's assertion, he had not had any x-rays since May 2023. *Id.* at p. 17. On November 17, 2023, the ARB denied the grievance on the merits. *Id.* at p. 11.

### LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, witness credibility, or determine the truth of the matter, but rather to determine whether a genuine issue of

material fact exists. *See Nat'l Athletic Sportswear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is the Court's duty to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit, or if the failure to exhaust was innocent.[4] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is terminated. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by prisoners, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This supports the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also*

---

[4] *Pavey* determined that an "innocent" failure to exhaust administrative remedies includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. *See Pavey*, 544 F.3d at 742. Moreover, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed frustrated, and the inmate will be permitted to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response).

*Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Further, it provides prison administrations an opportunity to address problems, reduce damages, and further understand factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or filing procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within sixty days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the

offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(a). If the prisoner is not satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate within sixty days of receipt of the grievance. *See* 20 ILL. ADMIN. CODE § 504.830(a) & (e). When reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the CAO. *Id.* The CAO will review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being addressed as an emergency. *Id.* If the CAO categorizes the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating

what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determined that the grievance is not an emergency, the inmate will be notified. *See* 20 ILL. ADMIN. CODE § 504.840(c). In these circumstances, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lawrence's grievance procedure follows the Illinois Administrative Code noted above and is made available to prisoners. (Doc. 28-5, p. 27). Lawrence's grievance procedure is located in its Offender Orientation Manual. *Id.* The procedure also notes if a prisoner can establish the grievance was not timely filed for good cause, then the grievance can still be considered. *Id.* Further, prisoners may receive assistance in completing their grievances. *Id.* For example, support is provided to prisoners who cannot prepare the grievance on their own or who are "impaired, disabled, or unable to communicate in the English language." *Id.*

## DISCUSSION

Dr. Tran argues that he is entitled to summary judgment because Plaintiff did not exhaust his administrative remedies. (Doc. 28). Specifically, Dr. Tran asserts Plaintiff failed to identify him in his grievances and filed this suit prematurely. *Id.* at p. 7-10. In response, Plaintiff contends both grievances concerned a continuing violation, which did not require multiple filings, and both were necessary to receive dental care. (Doc. 30, p. 2-3).

A.      **Grievance No. 12-22-130**

First, Dr. Tran argues Plaintiff did not exhaust his administrative remedies because Grievance No. 12-22-130 concerns Plaintiff's access to dental care at Lawrence generally rather than Dr. Tran's dental care. (Doc. 28, p. 7-8). The Court agrees.

Plaintiff contends that Grievance No. 12-22-130 alerted Lawrence to the "denial of medical treatment & pain" and is related to his Complaint, which "rests on the allegations that Defendant denied Plaintiff dental treatment." (Doc. 30, p. 2). However, the allegations in this grievance do not name or implicate Dr. Tran. In fact, this grievance could not possibly address Dr. Tran's treatment of Plaintiff's dental needs. The grievance was filed on December 14, 2022. (Doc. 28-2, Exh. B, p. 97). By Plaintiff's own admission, his first visit with Dr. Tran was not until January 31, 2023. (Doc. 23, p. 5-6). Therefore, the allegations in this grievance pertaining to the denial of Plaintiff's dental treatment generally do not relate to the claims in this case, *i.e.*, Dr. Tran's treatment of Plaintiff's dental needs.

Plaintiff also seeks to implicate Dr. Tran because he complained of treatment by dental office staff concerning the same condition. However, the actions of dental office staff are irrelevant to the issue of Dr. Tran's deliberate indifference. There is no supervisory liability under 28 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). That is, Dr. Tran is only liable for his personal actions. *See, e.g.*, *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 797 (7th Cir. 2014) (explaining that "§ 1983 requires proof of individual responsibility). As Grievance No. 12-22-130 does not implicate Dr. Tran, the sole defendant in this case, the Court finds that it does not support

Plaintiff's argument that he exhausted his administrative remedies.

**B.     Grievance No. 08-23-208**

Next, Defendant argues that Plaintiff prematurely filed this suit before exhausting Grievance No. 08-23-208. (Doc. 28, p. 9; 1). For his part, Plaintiff admits this grievance was not fully exhausted when he filed his Complaint. (Doc. 30, p. 3).

The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all administrative remedies. *See* 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. *See also Woodford*, 548 U.S. at 88, 93 (holding that "complet[ing] the administrative review process" is "a precondition to [a prisoner] bringing suit in federal court."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024. Moreover, "exhaustion must precede litigation." *Ford*, 362 F.3d at 398. Federal courts strictly enforce this requirement. *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Accordingly, if the prisoner files his lawsuit before his administrative remedies are fully exhausted, the lawsuit must be dismissed, even if, as is the case here, it becomes exhausted during the pendency of the lawsuit. *See Hernandez*, 814 F.3d at 841-842; *Ford*, 362 F.3d at 398.

Here, Plaintiff submitted this grievance on August 22, 2023. (Doc. 28-2, p. 89). He filed the Complaint in this case the following day, on August 23, 2023. (Doc. 1). The grievance did not become exhausted until months later, on November 17, 2023. (Doc. 28-1, p. 11). In short, Plaintiff "jumped the gun" when he filed this case before the ARB issued its final decision on the merits. *See, e.g.*, *Ford*, 362 F.3d at 398; *Flournoy v. Brookhart*, Case

No. 3:22-CV-49-MAB, 2024 WL 896278, at *6 (S.D. Ill. Mar. 1, 2024). Therefore, the Court agrees with Defendant that Plaintiff failed to exhaust his administrative remedies for the claims alleged in this grievance.

Nevertheless, Plaintiff asserts that this failure does not entitle Dr. Tran to summary judgment because the "same issue con[c]erning Plaintiff's dental heal[]thcare continues and has been ongoing since the date grievance 12-22-130 was submitted." (Doc. 30, p. 2). To support his argument, Plaintiff cites *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). (Doc. 30, p. 2). In *Turley*, the Seventh Circuit found that a plaintiff is not required to exhaust multiple grievances in cases where there is a continuing violation. *See Turley*, 729 F.3d at 649. However, as noted previously, the allegations in Grievance No. 12-23-130 fall outside the scope of this case. This case solely concerns the issue of Dr. Tran's deliberate indifference and negligence related to Plaintiff's dental care. The claims in this case do not include dental treatment by anyone other than Dr. Tran. Plaintiff says as much in his Motion for Leave: "Plaintiff moves to amend original complaint and exclude Lawrence Correctional Center John/Jane Doe Corrections Officers as Defendants. Any mention of John/Jane Doe Officers that remain in Amended Complaint is in supports of Counts One, and Two against Defendant Tran." (Doc. 23, p. 2). Plaintiff's intent to exclude other defendants is further evidenced by his case captions in his Motion for Leave and Proposed Amended Complaint, which only name Dr. Tran as a defendant. (Doc. 23, p. 1; 23-1, p. 1.). Plaintiff clearly meant to bring claims against Dr. Tran alone, and Grievance No. 12-23-130 does not concern Dr. Tran. Plaintiff filed Grievance No. 12-23-130 before he met Dr. Tran. Plaintiff admits that the dental treatment complained of in Grievance

No. 12-22-130 was "by a different dentist." (Doc. 30, p. 2). Thus, there is no "continuing violation" that would otherwise excuse Plaintiff's failure to exhaust Grievance No. 08-23-208.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 27). Plaintiff's claim of Eighth Amendment deliberate indifference against Dr. Tran is **DISMISSED** for failure to exhaust administrative remedies in accordance with the PLRA.

C.  **Jurisdiction**

As Plaintiff's Eighth Amendment claim has been dismissed for failure to exhaust, the Court must now determine whether to retain or relinquish supplemental jurisdiction over Plaintiff's remaining state law negligence claim. *See* 28 U.S.C. § 1367(c)(3). Typically, when all federal claims in a case have been dismissed prior to trial, district courts decline to exercise jurisdiction over any remaining state law claims. *See Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007). There are, however, three exceptions to this rule: (1) when the statute of limitations bars the refiling of the state law claim; (2) where substantial judicial resources have already been expended on the state law claim; and (3) when it is clearly apparent how the state law claim is to be decided. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-907 (7th Cir. 2007).

Here, the statute of limitations is not a concern. Illinois law provides plaintiffs the greater of one year or the remainder of the limitations period to refile claims in Illinois state court that have been dismissed in federal court for lack of jurisdiction. *See* 735 ILL.

COMP. STAT. § 5/13-217. *See also Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 515 (7th Cir. 2009). This includes claims that are dismissed after the court declines to exercise supplemental jurisdiction. *See Tamburo v. Elite Auto Credit, Inc.*, No. 18-cv-03169, 2020 WL 2745984, at *5 n.1 (N.D. Ill. May 27, 2020) (citing *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 637 (Ill. 1997)). Further, although some judicial resources have been expended in determining whether Plaintiff has exhausted his claims, none of Plaintiff's claims have been considered on the merits. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Neither can the Court say that the proper resolution of Plaintiff's negligence claim is absolutely clear. *See Sharp*, 578 F.3d at 515; *Johnson v. Schluter*, Case No. 22-cv-178-DWD, 2024 WL 4235853, at *8 (S.D. Ill. Sept. 19, 2024). For these reasons, the Court will not exercise jurisdiction over Plaintiff's state law negligence claim and **DISMISSES** the claim without prejudice.

## Conclusion

For the reasons stated above, the Court **GRANTS** Defendant Dr. Quang Tran's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies. (Doc. 27). Plaintiff's remaining state law negligence claim is also dismissed without prejudice. The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  May 22, 2025.**

Digitally signed by Judge Sison
Date: 2025.05.22 15:59:32 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**